IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD WAYNE JOHNSON
and TANYA JOHNSON,

      Plaintiffs,

v.                                   Civ. No. 15-1071 GBW/CG

CITY OF ROSWELL, *et al.*,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim. *Doc. 41.* Having reviewed the subsequent briefing and being fully advised, the Court will grant in part and deny in part the Motion to Dismiss.

### I.   PROCEDURAL POSTURE

Plaintiffs Richard Wayne Johnson and Tanya Johnson are suing the City of Roswell and its Police Department, as well as Police Chief Phil Smith in his individual and official capacity and several subordinate officers in their individual capacities. *See doc. 40.* Plaintiffs bring this action under 42 U.S.C. § 1983, alleging deprivation of their Fourth, Eighth, and Fourteenth Amendment constitutional rights through Defendants' use of excessive force. *Id.* at 1-2, 11-22. Plaintiffs have also asserted state law claims under the

New Mexico Tort Claims Act and the New Mexico Constitution based upon the same underlying factual assertions.  *Id*. at 2, 17-19, 22-32.

Plaintiffs initiated suit in the Fifth Judicial District Court of New Mexico on October 7, 2015.  *Docs. 2, 2-2.*  On November 23, 2015, Defendants removed the action to this Court pursuant to its federal question jurisdiction under 28 U.S.C. § 1331.  *Doc. 1.*  On December 14, 2015, Defendants City of Roswell and Phil Smith filed separate motions to dismiss Plaintiffs' action for failure to state a claim.  *Docs. 9, 10.*  On January 7, 2016, Plaintiffs filed a joint response to both motions, which included an informal request to amend their Complaint.  *Doc. 20.*  Following briefing on the matter, the Court denied Defendants' motions and granted Plaintiffs leave to amend their Complaint.   *Doc. 39.*  Plaintiffs filed their First Amended Complaint on April 10, 2016.  *Doc. 40.* Thereafter, Defendants jointly sought dismissal for failure to state a claim upon which relief could be granted.  *Doc. 41.* Following a granted extension, Plaintiffs filed their response on May 24, 2016, to which Defendants untimely replied on July 1, 2016.  *Docs. 51, 54.*

## II.    COMPLAINT'S FACTUAL ALLEGATIONS

### a.   *Factual Assertions Attributed to Plaintiffs*

On October 28, 2013, Plaintiff Richard Johnson ("Johnson") allegedly sustained a concussive head injury while in an altercation with a relative.  *Doc. 40* at 4.  Later that same day, he was ordered out of his house with the phrase "come out, mother fucker," which Plaintiffs claim came from an unknown speaker.  *Id.*  Johnson opened his door while

carrying a lawfully-possessed firearm and was confronted by Roswell Police Officers

Joseph Lannoye, Cruz Zavala, and Robert Swantek.  *Id*. at 4-5.  These officers were

purportedly on the premises for a welfare check and believed Plaintiff to be suicidal.  *Id*. at

5-7.  The Amended Complaint asserts that, upon exiting his home, Johnson was

immediately shot by the police officers.  *Id*.  Plaintiffs state that Johnson never fired his

weapon, nor raised or pointed it in a threatening fashion towards the officers.  *Id*. at 5, 9.

Plaintiffs further allege that these officers did not identify themselves as police in a manner

which Johnson could understand, and also failed to issue a warning for Johnson to drop

his weapon before using force.  *Id*. at 5, 9.  Plaintiffs state that this conduct resulted in

critical and grievous injury to Johnson, requiring an emergency airlift and hospitalization

which resulted in substantial medical bills.  *Id*. at 4-5, 9.

Plaintiffs claim that the force used against Johnson was unreasonable, unlawful,

and performed under color of law in reckless disregard of his constitutional rights.  *Id*.  at

9-10.  In addition to their allegations regarding the officers present during the incident,

Plaintiffs also claim that the City of Roswell and Police Chief Phil Smith knew or should

have known of a pattern of conduct regarding excessive force and failed to adequately

train, supervise, and discipline officers with regard to such conduct.  *Id*. at 10-11.

Specifically, Plaintiffs allege the existence of a policy which trains and instructs officers to

immediately utilize lethal force against any person in possession of a firearm, regardless of

whether such possession is lawful or threatening and regardless of whether the officers

were called for a suicide or mental health case.  *Id.* at 9-10.  Plaintiffs allege that these acts

and omissions by the individuals and entities named were conducted in intentional,

reckless, or deliberate disregard for Plaintiffs' rights and were the proximate cause of their

injuries.[1]  *Id.* at 11.

> b.  *Factual Assertions Attributed to Defendant Officers*

In addition to their own factual assertions regarding the incident giving rise to their

claims, Plaintiffs have also taken the unusual step of including within their Amended

Complaint testimonial statements attributed to the Defendant Officers present at the scene.

*See id.* at 5-9.  Portions of these statements are consistent with Plaintiffs' assertions of fact,

while other portions are inconsistent.  *Id.*  Additionally, these statements are only partially

consistent with one another.  *Id.*  While Plaintiffs have chosen to include these statements

in their Amended Complaint, it is evident from their own assertions of the facts that they

do not intend to adopt the officers' versions of the events where they are inconsistent with

their own version.  As the Court is not permitted to evaluate the strength of competing

evidence in evaluating a 12(b)(6) motion to dismiss, it will presume that the statements

attributed to the officers were in fact made by them, but will not assess the veracity of

these statements in comparison with the Plaintiffs' description of events.  *See, e.g, Chavez v.*

*City of Santa Fe Hous. Auth.*, 606 F.2d 282, 283 (10th Cir. 1979) (in reviewing a Rule 12(b)(6)

---

[1] While she does not claim any direct involvement in the underlying altercation between Johnson and the police, Plaintiff Tanya Johnson joins this action on the basis of loss of spousal consortium and Post-Traumatic Stress Disorder resulting from the alleged use of excessive force against her husband.  *Doc. 40* at 32.

order of dismissal, we must accept as true *the material factual allegations made by plaintiffs*) (emphasis added); *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."); *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (must view facts in the light most favorable to the nonmoving party).

The statements attributed to Officer Longberg and Defendant Swantek confirm that they had arrived on the scene for a welfare check and suspected that Johnson was suicidal. *Doc. 40* at 5-7.  With regard to Johnson's conduct during the incident, Defendants Lannoye and Swantek stated that they were unaware of Johnson firing any rounds and did not see a muzzle flash from Johnson's weapon.  *Id.* at 6, 8.  Further, Defendant Zavala allegedly stated that he did not see Johnson fire his weapon or point it at anyone, but instead stated that Johnson held the gun in a "low ready position."  *Id.* at 5.  However, Defendant Swantek purportedly stated that the officers had knocked and identified themselves as Roswell Police, after which Johnson yelled at his wife, rapidly exited his house, and pointed his weapon directly at Defendant Zavala.  *Id.* at 6.  Defendant Lannoye admitted that he shot Johnson, but claimed that Johnson had a clearly-identified pistol in his right hand that that he began raising it and pointing it towards the general vicinity of the officers.  *Id.* at 7-8.  Defendant Lannoye also stated that he had identified himself as

Roswell Police when he knocked on the door, and Officer Longberg confirmed hearing

knocking and the words "Roswell Police Department." *Id.* at 8, 5.

## III.   MOTIONS TO DISMISS

Defendants assert that Plaintiff's Amended Complaint should be dismissed as

deficient on the basis that, like the original Complaint, all claims lack factual specificity

and constitute mere conclusory recitations of elements which are insufficient to state a

claim. *See doc. 41.* Defendants further argue that the factual assertions from specific officer

testimony included in the Amended Complaint actually reveal facts sufficient to defeat

Plaintiffs claims. *Id.* Plaintiffs respond by reiterating their factual assertions put forth as

to each claim and contending that their Complaint, as amended, sufficiently states a claim

for relief against each of the Defendants. *See doc. 51.*

### A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for

failure to state a claim upon which the court can grant relief. Fed. R. Civ. P. 12(b)(6). When

ruling on a motion to dismiss, the court must accept as true all of Plaintiffs' well-pleaded

factual allegations in the complaint and must view them in the light most favorable to the

nonmoving party. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th

Cir. 1999); *Hall*, 935 F.2d at 1109. "The court's function on a Rule 12(b)(6) motion is not to

weigh potential evidence that the parties might present at trial, but to assess whether the

plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id*.

To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

The court need only evaluate allegations "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). Further, the court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Following these principles, the Court considers whether the facts "plausibly give rise to an entitlement to relief." *Barrett v. Orman*, 373 F. App'x 823, 825 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677-78).

B. <u>Analysis</u>

Federal courts treat excessive force claims as seizures subject to the reasonableness requirement of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). In order to establish a constitutional violation recoverable under 1983, the plaintiff must demonstrate that the force used by an officer was objectively unreasonable. *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008). Accordingly "[t]he precise question asked in an excessive force case is 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1322 (10th Cir. 2009) (quoting *Graham*, 490 U.S. at 397). In addition, the use of force must be judged from the perspective of a reasonable officer on the scene, and must embody an allowance for the fact that police officers are often forced to make split-second judgments under stressful and dangerous conditions. *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001); *Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997).

1. *§ 1983 Excessive Force Claims Against Defendants Zavala and Swantek*

Plaintiffs have generally alleged that Defendants Zavala, Swantek, and Lannoye, members of the Roswell Police Department present at the scene of Johnson's shooting, collectively used excessive force against Johnson and are thus liable under § 1983 and the New Mexico Tort Claims Act. *See doc. 40* at 1-2, 9-10, 12-14. However, a general and cursory accusation attributable to Defendants collectively is not itself sufficient where it

fails to identify the specific conduct of named individuals which forms the basis of the claim. *See Iqbal*, 556 U.S. at 678; *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-51 (10th Cir. 2008). Accordingly, the Court will evaluate the conduct attributed with particularity to the individual Defendants in order to determine whether the Complaint survives dismissal.

Plaintiffs specifically assert that Defendant Lannoye admitted to firing his weapon multiple times and shooting Plaintiff Johnson. *Doc. 40* at 7. Accordingly, analysis regarding Defendant Lannoye's culpability for the use of force will be separately addressed below. *See infra*, Section 2. By contrast, Plaintiffs' Amended Complaint contains no specific allegations that Defendants Zavala or Swantek ever shot Johnson or even discharged their weapons. *See generally doc. 40*. Thus, the Court will address the alternate theories of potential liability presented as to the non-shooting officers.

a. *Direct Liability / Active Participant Theory*

In the context of excessive force, officer conduct may sometimes be aggregated and analyzed together where all defendants actively participate in a coordinated use of force. *Estate of Booker v. Gomez*, 745 F.3d 405, 421-22 (10th Cir. 2014). However, when applied in the context of an officer shooting, one generally views officer conduct in the aggregate only where the defendant officers were "intimately involved in the actual use of deadly force—that is, they all fired at the suspect/plaintiff." *Diaz v. Salazar*, 924 F. Supp. 1088, 1096-97 (D.N.M. 1996). Here, as in *Diaz*, there is no factual assertion that multiple officers on the scene discharged their weapons. *See doc. 40* at 5-11; *Diaz*, 924 F. Supp. at 1097.

Accordingly, Defendants Zavala and Swantek cannot be directly liable under a theory of joint participation in the shooting itself.  *Diaz*, 924 F. Supp. at 1096. However, this conclusion does not end the Court's inquiry.

Case law has established two additional theories under which individuals may be liable for a claim of excessive force even where they are not directly active participants in the force itself: failure to intervene and reckless participation in creating the need for deadly force.  *See, e.g. Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008); *Thomson*, 584 F.3d at 1320.  The Court examines each theory individually.

> b.  *Affirmative Duty to Intervene*

Under the failure to intervene theory, "[i]t is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983.  Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance."  *Booker*, 745 F.3d at 422 (quoting *Mascorro v. Billings,* 656 F.3d 1198, 1204 n. 5 (10th Cir. 2011)).  Plaintiffs rely on this theory in their response to Defendants' motion to dismiss, arguing that their allegations that Defendants Zavala and Swantek failed to intervene to prevent excessive use of force against Johnson are sufficient to state a claim. *See doc. 51* at 4-6.

As an initial matter, it is unclear that the claim of liability for Defendants Zavala and Swantek on the basis of this theory is expressed with sufficient specificity in the

Complaint.  The only reference to this theory in the Complaint consists of a formulaic and conclusory assertion that "Defendants Joseph Lannoye, Cruz Zavala and Robert Swantek each had a duty to each other to intervene in order to prevent the other from violating Plaintiff's constitutional rights by using excessive force." *Doc. 40* at 13. Without any accompanying explanation or reference to the facts supporting this conclusion, Plaintiffs' mere assertion is insufficient.  *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Nonetheless, even to the extent that this theory is assumed sufficiently asserted, it cannot form the basis for relief under Plaintiffs' allegations.

In order for liability to attach, the officer on the scene must observe or have reason to know that excessive force is being used and there must have been a realistic opportunity to intervene to prevent the harm from occurring.  *See Hall v. Burke,* 12 F. App'x 856, 861 (10th Cir. 2001); *Tanner v. San Juan Cty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1117-18 (D.N.M. 2012).  As discussed, the use of force in this case was Defendant Lannoye firing his weapon at Plaintiff Johnson.  Courts in other jurisdictions have found that non-shooting officers did not have a realistic opportunity to intervene, considering that they could not have perceived a potential violation until the first shot was fired and that the shootings lasted only a matter of seconds.  *See, e.g.*, *Murray-Ruhl v. Passinault*, 246 F. App'x 338, 347-48 (6th Cir. 2007); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). Similarly, it is apparent from the instant circumstances that Defendants Zavala and

Swantek could not have had sufficient time or opportunity to intervene, given that the use of force occurred at the same time that these officers were required to make their own split-second evaluation as to whether Johnson's firearm posed an imminent deadly threat to the officers or bystanders.  *See doc. 40 at 4-11.*  Thus, Plaintiffs have not stated a claim for relief against Defendants Zavala and Swantek on the theory that they failed to intervene to prevent Defendant Lannoye's use of excessive force during his seizure of Johnson.

### c. *Reckless or Deliberate Creation of the Need to Use Deadly Force*

In addition to evaluating the danger to officers at the precise moment that force was utilized against an individual, the reasonableness inquiry also explores whether a Defendants' own reckless or deliberate conduct either during or immediately preceding the seizure unreasonably created the need to use such force.[2]  *Sevier v. City of Lawrence, Kan.,* 60 F.3d 695, 699 (10th Cir. 1995); *see also Allen,* 119 F.3d at 841 (denying summary judgment where reasonable jury could find that officers' reckless conduct in approaching suicidal suspect precipitated the need to use deadly force).  This approach takes into account the totality of circumstances, including "an officer's conduct prior to the suspect's threat of force if the conduct is immediately connected to the suspect's threat of force." *Allen,* 119 F.3d at 840 (internal quotation marks omitted); *Diaz,* 924 F. Supp. at 1096 ("To the extent pre-seizure conduct is immediately connected, both contemporaneously and

---

[2] By contrast, "[m]ere negligent actions precipitating a confrontation would not, of course, be actionable under § 1983." *Sevier v. City of Lawrence, Kan.,* 60 F.3d 695, 699 n. 7 (10th Cir. 1995).

causally, to the eventual seizure at issue, that conduct should be examined in determining the objective reasonableness of the force employed to effect the seizure.").

Therefore, § 1983 liability for excessive force may be applied even to officers who did not directly engage in the use of force where evidence indicates that non-shooting officers acted with reckless or deliberate conduct to escalate the confrontation into a deadly encounter.  *See, e.g., Diaz*, 924 F. Supp. at 1097; *see also* 42 U.S.C. § 1983 (1994) (stating that a defendant can be liable for "subject[ing], or *caus[ing] to be subjected*, any citizen . . . to the deprivation of any rights, privileges, or immunities . . .") (emphasis added).  Plaintiffs claim that the actions of Defendants Lannoye, Zavala and Swantek were "intentional, reckless, willful, or deliberate, obdurate, in gross and reckless disregard" of Plaintiffs' rights and with reckless indifference of Plaintiff Johnson's safety and continued health.  *Doc. 40* at 11.  The specific allegations relevant to reckless creation of the need for deadly force are contained in paragraphs 61 and 66 of the Complaint, which state:

> 61.   Defendants Joseph Lannoye, Cruz Zavala and Robert Swantek had a duty to refrain from engaging in reckless, deliberate and/or negligent conduct, which would unreasonably create the need for use of excessive force, such as the manner in which they approached, failure to make proper contact, no command to drop the firearm, using lethal force when a citizen is in possession of a firearm, failure to have a proper procedure to handle suicide and/or mental health issues.

[. . .]

> 66.   Because Defendants Joseph Lannoye, Cruz Zavala and Robert Swantek engaged in reckless or deliberate conduct, which unreasonably created the need for the use of force, Defendants Joseph Lannoye, Cruz Zavala and Robert Swantek's conduct violated

13

> Plaintiff Richard Johnson's clearly established Fourth and Eighth
> Amendment rights and any reasonable law enforcement officer would
> have known that the use of such force on Plaintiff under the
> circumstances would constitute a violation of his rights.

*Doc. 40* at 13-14.

These allegations of liability for the pre-seizure actions of Defendants Zavala and Swantek, as well as Defendant Lannoye (the shooting officer), are supported by various factual allegations. These include: all officers on the scene participating in a "game plan" regarding the operation and assignments for covering each entrance; their manner of approach, which omitted an attempt to contact Johnson or his wife by telephone or text; the manner in which they ordered Johnson out of his home; their failure to identify themselves as police so that Johnson could hear them; their decision to employ long rifles and submachine guns; the fact that they were aware that they had been called for a welfare check and that Johnson had suicidal tendencies; and the fact that no officer issued a warning or instruction for Johnson to drop his weapon. *See doc. 51* at 6; *doc. 40* at 5-7, 9, 13, ¶¶ 12, 21, 23, 27, 40, 61.

Defendants claim that, even assuming the truth of these statements, the actions attributed to the officers do not rise to the level of recklessness and that no case law supports the proposition that these alleged acts or omissions violate clearly established rights. *See doc. 54* at 4. However, several cases support Plaintiffs' proposition regarding the liability of Defendants Zavala and Swantek. The Tenth Circuit has recently held that material disputes precluded summary judgment where non-shooting officers, by failing to

adequately identify themselves and by aggressively ordering suspects out of their home, created the risk that the suspects would arm themselves in defense of their home, precipitating a deadly confrontation. *Pauly v. White*, 814 F.3d 1060, 1073-74 (10th Cir. 2016). In addition, District Court decisions within the Tenth Circuit have found that non-firing officers who did not themselves use force could be liable simply because those officers actively participated in an operation that caused the plaintiff to be deprived of his constitutional rights and the plaintiff presented evidence that the operation was likely to result in the use of deadly force. *See, e.g., Stewart v. City of Prairie Vill., Kan.*, 904 F. Supp. 2d 1143, 1157 (D. Kan. 2012); *Strachan v. City of Fed. Heights, Colo.*, 837 F. Supp. 1086, 1091 (D. Colo. 1993).

Further, the facts asserted by Plaintiffs, presumed true, plausibly support the conclusion that the officers involved in the operation engaged in reckless conduct which precipitated the need for the use of deadly force. Police officers are expected to announce their presence and identify themselves when effectuating a seizure at a private residence and are required, where feasible, to issue an instruction or warning before utilizing deadly force. *See United States v. Jenkins*, 175 F.3d 1208, 1213 (10th Cir. 1999) (stating the general presumption that police "must announce their presence and authority before entering" a residence); *Samuel v. City of Broken Arrow*, 506 F. App'x 751, 754 (10th Cir. 2012) ("[I]t is clear that some warning must be given before an officer uses deadly force if feasible."). Failure to comply with these obligations can create liability as to the shooting and non-

shooting officers due to this conduct's unreasonable and foreseeable risk of deadly

confrontation.  *See Pauly*, 814 F.3d at 1074 (holding that material disputes remained "as to

whether the officers here could reasonably foresee that [the suspects] would defend their

home with deadly force . . . because disputed facts remain concerning whether the officers

properly identified themselves and whether [the suspects knew whether the officers

outside] were intruders or state police."); *Dorato v. Smith*, 108 F. Supp. 3d 1064, 1156

(D.N.M. 2015) (holding that the failure to issue a warning before using deadly force was a

factor precluding dismissal in evaluating excessive use of force); *Cooper v. Sheehan*, 735

F.3d 153, 159-60 (4th Cir. 2013) (finding that, where police do not identify themselves, the

reasonable explanation that a person might lawfully carry a firearm while investigating a

disturbance on his own property should have been apparent to officers).

Accordingly, Plaintiffs have pled sufficient allegations to state a plausible claim for

relief against non-shooting Defendants Zavala and Swantek on the theory that they were

actively involved in a coordinated operation which recklessly precipitated the need for the

use of deadly force.

### 2.   § 1983 Excessive Force Claims Against Defendant Lannoye

As noted above, Plaintiffs are pursuing federal § 1983 and state law claims for

excessive use of force against Defendant Lannoye, among other officers.  Plaintiffs have

alleged that Defendant Lannoye admitted to firing his weapon multiple times,

intentionally shooting Plaintiff Johnson.  *Doc. 40* at 7-8, ¶¶ 29, 34.  They allege that this

action was not an objectively reasonable use of deadly force, that it violated Johnson's clearly established constitutional rights, and that it was the direct and proximate cause of Plaintiffs' injuries.

Deadly force is defined as force used which "create[s] a substantial risk of causing death or serious bodily harm." *Jiron v. City of Lakewood,* 392 F.3d 410, 415 n. 2 (10th Cir. 2004) (internal quotation marks omitted). Purposely discharging a firearm in the direction of another person is considered to be a use of deadly force even if the shooting is ultimately non-fatal. *Id.* Further, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." *Graham,* 490 U.S. at 397. However, "[i]f a particular use of force is considered deadly force, then an officer's use of that force is reasonable only 'if a reasonable officer in Defendants' position would have had probable cause to believe that there was a *threat of serious physical harm* to themselves or to others.'" *Thomson,* 584 F.3d at 1313 (quoting *Estate of Larsen,* 511 F.3d at 1260). In assessing the degree of threat posed by an individual, the Court considers factors that include, but are not limited to: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Estate of Larsen,* 511 F.3d at 1260.

In the Amended Complaint, Plaintiffs state in relevant part that the officers, including Defendant Lannoye, never identified themselves as police in a manner by which Johnson could understand them. *Doc. 40* at 5, ¶ 12.  Plaintiffs also allege that the officers did not issue any warning or instruction for Johnson to drop his weapon, instead shooting him almost immediately after he opened the door of his home while holding a firearm.  *Id.* at 4-5, 7, 9, ¶¶ 11-13, 29, 38, 40.  Pertinent to the second and fourth factors, Plaintiffs further assert in their pleading that while Johnson was in lawful possession of a firearm, he never raised it, pointed it at any person, or fired it.  *Id.* at 5-6, 9, ¶¶ 13-14, 24, 37.  With regard to the third factor, Plaintiffs do not provide a factual assertion regarding the distance separating Defendant Lannoye and Johnson.  However, statements in the Amended Complaint reflect that Defendant Lannoye knocked on the door and that when Johnson opened the door, Defendant Lannoye fired and created distance by moving backwards. *See doc. 40* at 6-8, ¶¶ 23, 25, 29-30, 34.  These facts imply that the two were in relatively close proximity at the outset of the incident.

Defendants argue that these facts do not state a claim for relief, contending that the constitutional reasonableness standard did not require Defendant Lannoye to wait until Johnson discharged his weapon before firing his own weapon.  *Doc. 41* at 5-7.  Indeed, cases cited by Defendants agree with the general proposition that an officer need not wait until a suspect holding a weapon actually fires the weapon before resorting to deadly force.  *See Davis v. McCarte*r, 569 F.Supp.2d 1201, 1206 (D. Kan. 2008) (stating that [the

officer] was "certainly not expected to wait until [the suspect] had actually fired his weapon at him, his partner, or an innocent bystander to [use deadly force] to stop him from doing so"); *Montoute v. Carr*, 114 F.3d 181, 185 (11th Cir. 1997) ("[A]n officer is not required to wait until an armed and dangerous felon has drawn a bead on the officer or others before using deadly force."); *Ayala v. J.W. Wolfe, II*, 546 Fed. Appx. 197, 203-04 (4th Cir. 2013) (police officer's initial decision to shoot suspect did not constitute excessive force where suspect took his right hand off hood to remove gun in his waistband).

However, these cases are materially distinguishable from Plaintiffs' description of events in this case because they involved facts which otherwise demonstrated risk to officers and/or others.  In *Davis*, the suspect was in the act of fleeing from police with a gun in his hand, had ignored multiple instructions to drop his weapon, and had shown reckless disregard for the safety of the community by driving dangerously during the preceding car chase, supporting the reasonable conclusion that he intended to use the weapon against police and bystanders.  *See* 569 F. Supp. 2d at 1206-07.  Similarly, the suspect in *Mantoute* was a fleeing felon who had already committed a crime involving infliction of serious physical harm on another and had refused to heed repeated officer instructions to drop his weapon.  *See* 114 F.3d at 183-185.  In *Ayala*, the officer's identification as such was evident, due to his uniform and marked police car, before the suspect drew his weapon and the suspect disobeyed an order from the officer to keep his hands on the patrol vehicle.  546 Fed. App'x at 199-201.  These facts are critical to

determining reasonableness of the officer's threat assessment and the manifest intent of the suspect. *Compare Elliot v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996) ("[n]o citizen can fairly expect to draw a gun on police without risking tragic consequences") *with Cooper*, 735 F.3d at 159-60 (in holding that officers' decision to use deadly force was not reasonable, noting that "[i]mportantly, the Officers never identified themselves—even when asked by Cooper. If the Officers had done so, they might have been safe in the assumption that a man who greets law enforcement with a firearm is likely to pose a deadly threat"). Consequently, these distinctions render the cases cited by Defendants of limited value to the central question of whether, as a matter of law, a reasonable officer in Defendant Lannoye's position would have had probable cause to believe that there was a threat of serious physical harm to himself or to others.

By contrast, cases from other jurisdictions evaluating circumstances which closely mirror those alleged by Plaintiffs have emphasized that "[a]bsent any additional factors which would give the Officers probable cause to fear for their safety or for the safety of others, the mere presence of a weapon is not sufficient to justify the use of deadly force." *Pena v. Porter*, 316 F. App'x 303, 312 (4th Cir. 2009); *see also Cooper*, 735 F.3d at 159 ("an officer does not possess the unfettered authority to shoot a member of the public simply because that person is carrying a weapon.  Instead, deadly force may only be used by a police officer when, based on a reasonable assessment, the officer or another person is *threatened* with the weapon.").

In *Pena*, a pair of officers searching for a fugitive came to the plaintiff's home late at night, but did not identify themselves.  316 F. App'x at 305-07.  With no knowledge that the police were outside, the plaintiff opened his door while holding a rifle pointed toward the ground.  *Id.* at 307, 310-12.  One of the officers saw the firearm and immediately fired two shots that struck Pena.  *Id.* at 307, 311.  In his § 1983 suit, the Fourth Circuit affirmed the denial of summary judgment on the basis of qualified immunity, finding that Pena had a perfectly reasonable rationale for holding the rifle which should have been apparent to the officers at the time of the shooting.  *Id.* at 311-12.  The Court stressed that, despite his possession of a weapon, "the Officers had no probable cause to believe that Pena was dangerous" because: (1) he did not threaten the officers; (2) they "did not witness Pena threatening anyone else;" (3) he "was not under arrest at the time of the confrontation;" and (4) he "was unaware that police officers were outside his trailer when he opened his front door."  *Id.*

Similarly, the facts in *Cooper* indicate that the suspect was alerted to the sound of unknown persons outside his mobile home.  735 F.3d at 154.  Cooper stepped onto his porch with a lowered shotgun in hand to investigate.  *Id.* at 154-55.  Police officers who were on the property investigating a domestic disturbance did not identify themselves or issue a warning, but instead began shooting at Cooper within seconds of him opening his door.  *Id.*  The Fourth Circuit upheld the district court's denial of summary judgment, explaining that:

When the Officers fired on Cooper, he stood at the threshold of his home, holding the shotgun in one hand, with its muzzle pointed at the ground. He made no sudden moves.  He made no threats.  He ignored no commands. The Officers had no other information suggesting that Cooper might harm them.  Thus, the facts fail to support the proposition that a reasonable officer would have had probable cause to feel threatened by Cooper's actions.

*Id.* at 159.

In *Pauly v. White*, 814 F.3d 1060 (10th Cir. 2016), the Court of Appeals for the Tenth Circuit addressed facts similar to the present case, holding that an officer's use of deadly force may be unreasonable even where a suspect inside his home has armed himself if the officers failed to identify themselves or issue a warning for the suspect to drop the weapon.. In addition, other cases within our Circuit have adopted the same principle articulated in *Pena* and *Cooper* -- that a suspect's mere possession of a weapon does not satisfy the reasonableness requirement for the use of deadly force absent additional evidence that the suspect poses an imminent threat.  *See, e.g. Murphy v. Bitsoih*, 320 F. Supp. 2d 1174, 1193 (D.N.M. 2004) (finding that courts uniformly required more than the mere presence of a deadly weapon near an officer to justify the use of lethal force); *Diaz*, 924 F. Supp. at 1094 (in evaluating police use of force where suspect possessed a weapon, explaining that "[a]lthough a knife is a deadly weapon, its mere status as such does not create the justification for the use of deadly force"); *Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir. 1995), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)(considering whether decedent held gun in a downward position as part of the reasonableness inquiry). The holdings of these cases, along with the rationale explained by the Fourth Circuit,

strongly support concluding that Plaintiffs' version of events, presumed true for purposes

of this motion, give rise to a plausible claim for relief against Defendant Lannoye for the

unreasonable use of deadly force.

Finally, the Court is unpersuaded that the officer testimony included in Plaintiffs'

Amended Complaint may form the basis of dismissal under a 12(b)(6) motion.  As noted

above, Plaintiffs have made the unusual decision to acknowledge, within the face of their

Amended Complaint, certain testimonial and audio evidence from Defendants which is

inconsistent with Plaintiffs' own assertions as to pertinent facts.  *See, e.g., doc. 40* at 5-9, ¶ 19

(Officer Longberg's statement that he heard fellow officers announce "Roswell Police

Department" after knocking), ¶ 23 (Defendant Swantek's statement that the officers

knocked and announced Roswell Police, after which Johnson yelled at his wife and came

straight out of his home with a gun, pointing it directly at Defendant Zavala), ¶ 30

(Defendant Lannoye's statement that Johnson had begun raising his revolver before

Lannoye shot him), ¶ 33 (Defendant Lannoye's statement that he identified himself as

Roswell Police when knocking on the door),  ¶ 36 (belt tape audio recording on which the

words "Roswell police" can allegedly be heard twice).  However, the content of these

statements are clearly represented as the mere assertions of the individual Defendants,

rather than being pled as facts by Plaintiffs' themselves.  *See doc. 40 at 4-11.*  Accordingly,

the Court is required to presume only the truth of the factual assertions which Plaintiffs

themselves represent to be true, viewing these facts in the light most favorable to them.
*See Chavez*, 606 F.2d at 283; *Sutton*, 173 F.3d at 1236.

The evidence attributed to Defendants may indeed prove detrimental to Plaintiffs'
case at the summary judgment stage, as Plaintiffs will bear the burden to sufficiently rebut
this evidence with their own in order to create a dispute as to these material facts.  *See
Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  However, analyzing the existence
of competing evidence is premature and is not an appropriate undertaking on a motion to
dismiss.  *See Miller*, 948 F.2d at 1565 ("The court's function on a Rule 12(b)(6) motion is not
to weigh potential evidence that the parties might present at trial . . . ."); *Twombly*, 550 U.S.
at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that
actual proof of those facts is improbable, and that a recovery is very remote and unlikely.")
(internal quotation marks omitted).
Accordingly, the Court finds that Plaintiffs' representations of events, as contained in the
Amended Complaint, sufficiently state a claim for relief against Lannoye.[3]

### 3.   *Qualified Immunity Defense as to Defendants Zavala, Swantek, and Lannoye*

In addition to their assertion that Plaintiffs have failed to state a claim against them,
Defendants Zavala, Swantek, and Lannoye have also sought dismissal on the alternative
ground that they are entitled to qualified immunity, precluding Plaintiffs' § 1983 claims

---

[3] Plaintiffs have also stated a sufficient alternative claim for relief against Defendant Lannoye based on the
same rationale for which liability may be imposed against non-shooting officers; namely that  his pre-seizure
conduct and participation in the joint operation recklessly created the need for the use of deadly force.  *See
supra,* Section 1(c).

against them.  *Doc. 41* at 7-8.  "In general, even though conduct is 'unreasonable' under the Fourth Amendment, because of 'the difficulty of determining whether particular searches or seizures comport with the Fourth Amendment,' . . . such conduct may nevertheless be objectively reasonable for purposes of qualified immunity."  *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 644 (1987)).  The Tenth Circuit has held that where qualified immunity is at issue, a plaintiff must demonstrate on the facts alleged that:

(1) defendants' conduct violated his federal constitutional or statutory rights, and (2) the rights violated were clearly established at the time of the alleged violation.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  Accordingly, "[a]n officer using force in the course of a seizure of a citizen is entitled to qualified immunity unless the level of force violated clearly established Fourth Amendment law."  *Thomson*, 584 F.3d at 1313.  One significant difficulty in this analysis is identifying the level of generality at which the constitutional right must be "clearly established."  Unsurprisingly, the parties disagree on this point.

"For a right to be clearly established there must be Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the officers' actions apparent."  *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir.2011); *see also Ashcroft v. al–Kidd*, 563 U.S. 731 (2011) ("A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear

that every reasonable official would have understood that what he is doing violates that right." (quotations omitted).  In other words, "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (quotation omitted).  The "dispositive question is whether the violative nature of particular conduct is clearly established, and the inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (quotations omitted).

"The plaintiff is not required to show, however, that the very act in question previously was held unlawful in order to establish an absence of qualified immunity." *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (quoting *Cruz v. City of Laramie*, 239 F.3d 1183, 1187 (10th Cir. 2001)).  A "general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotation omitted).  Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id*.  This approach shifts "the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

This Circuit has adopted a sliding scale to determine when law is clearly established.  *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* (quoting *Pierce*, 359 F.3d at 1298).  "Thus, when an officer's violation of the Fourth Amendment is particularly clear from *Graham* itself, we do not require a second decision with greater specificity to clearly establish the law." *Id.*

It is true at the most general level that "[t]he reasonableness standard is 'clearly established' in the context of § 1983 actions." *Medina*, 252 F.3d at 1131.  Similarly, it is clearly established that where a suspect poses no immediate threat to the officer or others, the use of deadly force is not justified.  *See Garner*, 471 U.S. at 11; *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010).  In urging dismissal based on qualified immunity, Defendants state that "it was not a clearly established right that an officer must wait to be fired upon before discharging his weapon." *Doc. 41* at 8.  This assertion was based upon Defendant Swantek's and Defendant Lannoye's statements that, after they had identified themselves as Roswell Police Officers, Johnson exited the house with a weapon and began raising his firearm and pointing it toward the officers.  *See Doc. 40* at 6-8, ¶¶ 23, 30-33.

Were the Court to accept Defendants' statement of facts and standard, the officers may indeed be entitled to immunity, as the Fourth Amendment does not require an officer

to refrain from using deadly force against a suspect who has presented an imminent threat until that suspect fires their own weapon.  *See, e.g., See Elliot*, 99 F.3d at 644; *Davis*, 569 F. Supp. 2d at 1206.  However, as explained above, this Court is required to accept as true Plaintiffs' version of events as asserted and view facts in the light most favorable to them. *See Chavez*, 606 F.2d at 283; *Sutton*, 173 F.3d at 1236.  Here, Plaintiffs assert that, unadvised and otherwise unaware of the identity of the persons outside his home, Johnson answered his door carrying a lawfully-possessed firearm, but never raised or pointed it towards anyone.  *See doc. 40* at 4-6, 9, ¶¶ 11-14, 24, 37-38.  Accordingly, at this stage, the proper inquiry for determining qualified immunity based on the facts alleged is whether it is clearly established that mere possession of a weapon, in absence of any independent threat, does not satisfy the reasonableness standard for an officer to use deadly force.

As discussed above, case law within our Circuit supports the principle that a suspect's mere possession of a weapon does not justify the use of deadly force absent additional evidence that the suspect poses an imminent threat.  *See, e.g. Murphy*, 320 F. Supp. 2d at 1193; *Diaz*, 924 F. Supp. at 1094; *Wilson*, 52 F.3d at 1553 (*abrogated on other grounds*).  In addition, the Tenth Circuit has held, in analyzing circumstances closely analogous to the present case, that liability for the alleged conduct of both shooting and non-shooting officers has been clearly established.  In *Pauly*, two officers investigating a misdemeanor road rage incident approached the house of a suspect and his brother in a manner such that neither brother knew the officers were at the property.  814 F.3d at 1065-

66. Without adequately identifying themselves as police, the officers used expletives and ordered both occupants out of the home.  *Id*. at 1066.  The brothers, fearing that an invasion of their home by unknown persons was imminent, armed themselves with firearms and warned the officers that they had done so.  *Id*. at 1066-67.  During this exchange, a third officer was arriving on the scene.  *Id*. at 1066.  The two brothers raised their weapons and pointed them out of the home, and the third officer fired, killing the suspect.  *Id*. at 1067.  The Tenth Circuit denied summary judgment on the basis of qualified immunity to the non-shooting officers, holding that clearly established law put the officers on notice that failing to identify themselves would foreseeably cause a deadly confrontation, as citizens are permitted to brandish firearms for self-defense on their own property under New Mexico Law.  *Id*. at 1072-76 (citing *District of Columbia v. Heller*, 554 U.S. 570, 628-29 (2008); *State v. Boyett*, 185 P.3d 355, 358–59 (N.M. 2008)).  Further, the court found that qualified immunity was not available to the shooting officer, as factual disputes remained as to whether it would have been feasible to issue a warning before utilizing deadly force, even where a suspect had raised a firearm towards police.  *Id*. at 1077-83.

      This Tenth Circuit precedent is also consistent with the larger weight of authority from other courts which precludes the application of qualified immunity.  A plethora of federal circuits which have directly confronted this issue have clearly established that, without additional factors indicating an imminent threat to officers or bystanders, the mere presence of a weapon is not sufficient to justify the use of deadly force.  *See, e.g.,*

*Cooper*, 735 F.3d 153, 159 (4th Cir. 2013) (denying qualified immunity based on the finding that "an officer does not possess the unfettered authority to shoot a member of the public simply because that person is carrying a weapon.  Instead, deadly force may only be used by a police officer when, based on a reasonable assessment, the officer or another person is *threatened* with the weapon."); *Bouggess v. Mattingly*, 482 F.3d 886, 896 (6th Cir. 2007) (in denying summary judgment based on qualified immunity, holding that "even when a suspect has a weapon, but the officer has no reasonable belief that the suspect poses a danger of serious physical harm to him or others, deadly force is *not* justified"); *Bennett ex rel. Estate of Bennett v. Murphy*, 120 F. App'x 914 (3d Cir. 2005) (denying qualified immunity under "immediate threat" standard in case of officer who shot armed, non-fleeing suspect who did not point weapon at anyone other than himself); *Estate of Lopez v. Gelhaus*, 149 F. Supp. 3d 1154 (N.D. Cal. 2016) (in denying qualified immunity, noting that "[t]he Ninth Circuit has held that the mere possession of a weapon is not sufficient to justify the use of deadly force . . ."); *see also Gonzales-Guerrero v. City of San Jose*, No. CV12-03541 PSG, 2013 WL 3303144, at *3 (N.D. Cal. June 28, 2013) ("Mere possession of a firearm, without more, cannot justify shooting to kill.").  The Court therefore concludes that, accepting Plaintiffs' account of the incident, they have demonstrated a clearly established constitutional violation precluding dismissal on the basis qualified immunity.  *Thomson*, 584 F.3d at 1313.

#### 4. *State Law Claims Against Defendant Lannoye*

In addition to their § 1983 claims, Plaintiffs have also asserted several claims for relief against each of the three Defendant Officers present at the scene of the incident based on state constitutional and statutory law. *Doc. 40* at 17-19, 22-29. For the sake of clarity, the Court will separate Defendant Lannoye, who admitted to shooting Plaintiff Johnson, from the non-shooting officers, and will address each state law claim individually.

##### a. *Violation of N.M. Stat. Ann § 41-4-12: Common-Law Negligence*

Under New Mexico law, a police officer may be liable for negligence that results in a specifically enumerated tort under the New Mexico Tort Claims Act, including "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico." N.M. Stat. Ann. 1978 § 41-4-12; *Caillouette v. Hercules, Inc.*, 827 P.2d 1306, 1311 (N.M. Ct. App. 1992). "[A] claim arising out of one of the common-law torts enumerated within the Section 41-4-12 waiver of immunity is essentially a common-law negligence claim, and the plaintiff need only show a violation of a common-law duty." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dept.*, 916 P.2d 1313, 1319 (N.M. Ct. App. 1996). Further, the New Mexico Supreme Court has set out the ordinary common-law duty of law enforcement officers, holding that "a law enforcement officer has the duty in any

31

activity actually undertaken to exercise for the safety of others that care ordinarily exercised by a reasonably prudent and qualified officer in light of the nature of what is being done." *Cross v. City of Clovis,* 755 P.2d 589, 591 (N.M. 1988) (footnote omitted).

In this case, Plaintiffs have asserted that Johnson suffered the harms of assault and battery, both of which are common-law torts enumerated in the Act. *See doc. 40* at 19, ¶ 92; N.M. Stat. Ann. 1978 § 41-4-12. Accordingly, for Plaintiffs to state a claim of negligence against Defendant Lannoye on the basis of the resulting intentional tort, they "need only allege that the officers failed to exercise the care of reasonably prudent and qualified officers in an activity undertaken for the safety of others." *Weinstein*, 916 P.2d at 1320. Plaintiffs here have explicitly levied such allegations. *See doc. 40* at 18-19. Further, accepting Plaintiffs' version of the incident, they have presented sufficient facts that Defendant Lannoye failed to exercise reasonable care in an activity undertaken for the safety of others. Plaintiffs claim that despite being on Plaintiffs' property for a welfare check on a potentially suicidal individual, Defendant Lannoye failed to identify himself as a police officer, ordered Johnson to exit his home with profanity, and immediately shot him without warning. *See id.* at 4- 9, ¶¶ 11-14, 19, 22, 27-29, 38-40. Plaintiffs have alleged that Defendant Lannoye failed to exercise reasonable care and have also pled that an assault and battery resulted from Defendant Lannoye's negligence. Accordingly, Plaintiffs have stated a claim for relief against Defendant Lannoye as to this cause of action.

b. *Violations of N.M. Stat. Ann § 41-4-12: Assault and Battery*

In addition to their theory of common-law negligence, Plaintiffs assert liability on the basis of the intentional torts of assault and battery themselves. *Doc. 40* at 22-24. Both of these torts are enumerated within Section 41-4-12, thus waiving immunity and allowing the claims to proceed against law enforcement defendants. N.M. Stat. Ann. 1978 § 41-4-12.

To establish liability for assault under New Mexico law, a plaintiff must show that the defendant "act[ed] intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . [that person was] thereby put in such imminent apprehension." *Archuleta v. City of Roswell*, 898 F. Supp. 2d 1240, 1254 (D.N.M. 2012) (quoting *Restatement (Second) of Torts* § 21 (1965)). Similarly, a person is subject to civil liability for battery if "he [or she] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . an offensive contact with the person of the other directly or indirectly results." *State v. Ortega*, 827 P.2d 152, 155 (N.M. Ct. App. 1992). A police officer will not be liable for battery so long as he acted in good faith and only used the force reasonably necessary under the circumstances. *See Jonas v. Bd. of Comm'rs of Luna Cty.*, 699 F. Supp. 2d 1284, 1297 (D.N.M. 2010) (citing *State v. Gonzales*, 642 P.2d 210, 213 (N.M. Ct. App. 1982)). In both the Amended Complaint and Defendants' Motion to Dismiss, Defendant Lannoye does not appear to contest that he intended to shoot, and therefore commit battery against Plaintiff Johnson. *See doc. 40* at 7, ¶ 29; *doc. 41*

33

at 5.  Instead, he argues that he used reasonably necessary force.  *See doc. 40* at 7, ¶ 30; *doc. 41* at 5-6.  However, as discussed at length, Plaintiffs have pled sufficient facts indicating that, presuming the truth of their version of events, Defendant Lannoye's use of deadly force was not objectively reasonable based on the totality of circumstances.  *See supra,* Section 2; *see also doc. 40* at 4-5, 9.  Plaintiffs have thus stated a claim against Defendant Lannoye for assault and battery, precluding dismissal under Rule 12(b)(6).

 *c.  Claim for Violations of New Mexico Constitution under the Tort Claims Act*

 Plaintiffs have also asserted a Tort Claims Act claim based on violations of several provisions of the New Mexico Constitution's Article II.  *Doc. 40* at 24-29.  Each of these provisions closely mirrors its federal counterpart, and Plaintiffs have pled the same facts which establish Constitutional violations in their § 1983 claim to form the basis for violations under the New Mexico Constitution.  *Compare* N.M. Const. art. II, §§ 10, 18 *with* U.S. Const. amends. IV, XIV.  However, Plaintiffs have also argued that the rights provided by the state constitution should be interpreted more expansively than those provided by its federal equivalent, particularly as applied to damages and waiver of sovereign immunity.  *See doc. 40* at 25-29.

 At this point, the Court need not resolve the question of whether the New Mexico Constitution confers more expansive protections than its federal counterpart, as Plaintiffs have sufficiently stated a claim even presuming that it does not warrant a more expansive reading of rights.  As stated above, the New Mexico Tort Claims Act imposes liability on

police officers for a variety of specifically enumerated claims, including "deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico." N.M. Stat. Ann. 1978 § 41-4-12. Further, federal case law analyzing similar claims to those in the present case have held that "New Mexico law applies a reasonableness standard, much like federal law, to excessive-force claims under the New Mexico constitution." *Sisneros v. Fisher*, 685 F. Supp. 2d 1188, 1222 (D.N.M. 2010); *see also Hernandez v. City of Albuquerque*, No. CIV 02-0333 JB/RHS, 2004 WL 3426418, at *2 (D.N.M. Jan. 2, 2004). As discussed in the Court's analysis of Plaintiffs' § 1983 claim, Plaintiffs have adequately stated a claim that Defendant Lannoye's use of deadly force against Johnson was objectively unreasonable in violation of his constitutional rights. *See supra,* Section 2. Accordingly, the Court reaches the same conclusion with regard to Johnson's rights under the state constitution and holds that Plaintiffs' have sufficiently stated a claim against Defendant Lannoye as to this cause of action.

### 5.  *State Law  Claims Against Defendants Zavala and Swantek*

Plaintiffs have also brought their claims based on state constitutional and statutory law against Defendants Zavala and Swantek, the non-shooting officers present at the scene of the incident where Plaintiff Johnson was injured. *See doc. 40* at 17-19, 22-29. Accordingly, the Court now addresses their liability as to these claims.

    a.  *Violations of N.M. Stat. Ann § 41-4-12: Common-Law Negligence / Acts Committed by Third Party*

As indicated above, a law enforcement officer may be liable for common-law negligence that results in a specifically enumerated tort under the New Mexico Tort Claims Act, including assault and battery as well as deprivation of rights. N.M. Stat. Ann. 1978 § 41-4-12; *Weinstein*, 916 P.2d at 1319. For purposes of analyzing negligence, a police officer has the duty to exercise care equal to that ordinarily exercised by a reasonably prudent and qualified officer in light of the circumstances. *Cross,* 755 P.2d at 591.

Plaintiffs' assertion that Johnson suffered the enumerated torts of assault and battery means that Plaintiffs need only show that Defendants Zavala and Swantek failed to exercise reasonable care in the performance of their duties at the time the tort occurred. *See doc. 40* at 19, ¶ 92; *Weinstein*, 916 P.2d at 1320. Significantly, liability may be asserted against negligent officers under the Tort Claims Act even if the underlying enumerated tort was committed by a third party. *Weinstein*, 916 P.2d at 1319; *Methola v. County of Eddy*, 622 P.2d 234, 238 (N.M. 1980). Plaintiffs here have indeed presented sufficient factual assertions that Defendants Zavala and Swantek acted unreasonably in an activity undertaken for the safety of Johnson. Plaintiffs claim that Defendants Zavala and Swantek, despite knowing that they were performing a welfare check on a potentially suicidal individual, nonetheless actively participated in the planning and execution of a reckless operation that was likely to result in the use of deadly force. *See doc. 40* at 5-7, ¶¶ 19, 22-23, 27-28. Additionally, Plaintiffs allege that Defendants Zavala and Swantek failed

to identify themselves as police officers and failed to instruct Johnson to drop his weapon. *Id.* at 5, 9, ¶¶ 12, 40.  As explained in the § 1983 analysis above, other courts within the Tenth Circuit have found that such conduct by non-shooting officers states a plausible claim for recklessness, thereby confirming that the less stringent standard of negligence is satisfied.  *See supra,* Section 1(c); *see also Stewart*, 904 F. Supp. 2d at 1157; *Strachan*, 837 F. Supp. at 1091.  Accordingly, Plaintiffs have stated a claim for relief against Defendants Zavala and Swantek as to this cause of action.

b. *Violations of N.M. Stat. Ann § 41-4-12: Assault and Battery*

Plaintiffs have asserted liability against Defendants Zavala and Swantek for the intentional torts of assault and battery.  *Doc. 40* at 22-24.  These torts are enumerated within Section 41-4-12, thus waiving immunity as to law enforcement defendants.  N.M. Stat. Ann. 1978 § 41-4-12.  As explained above, Plaintiffs have stated a Tort Claims Act claim for relief against Defendants Zavala and Swantek under the theory that their common-law negligence resulted in an assault and battery, even though the enumerated torts were allegedly committed by a third party.  *See supra,* Section 5(a). However, Plaintiffs in this claim seek to establish liability for the underlying intentional torts themselves.  Thus, the Court evaluates liability based on the state law elements for assault and battery.

As noted above, assault requires a showing that a defendant "act[ed] intending to cause a harmful or offensive contact with the person of the other or a third person, or an

imminent apprehension of such a contact, and . . . [that person was] thereby put in such imminent apprehension." *Archuleta*, 898 F. Supp. 2d at 1254.  Similarly, a charge of civil liability for battery requires that a defendant "acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . an offensive contact with the person of the other directly or indirectly results." *Ortega*, 827 P.2d at 155.  Here, Plaintiffs have provided no facts indicating that either Defendant Zavala or Defendant Swantek took any action which itself resulted in harmful contact or imminent apprehension of such a contact.  *See, generally, doc. 40.*  The Amended Complaint does not specifically allege that either of these Defendants actually shot Plaintiff Johnson, nor does it claim that they ever raised or fired their weapons or issued threats sufficient to create a reasonable apprehension of imminent contact.  *See doc. 40 at 4-11.*  It is true that their participation in an operation which precipitated the need to use deadly force and failure to identify themselves as police could plausibly constitute negligent or even reckless conduct.  *See Stewart*, 904 F. Supp. 2d at 1157; *Strachan*, 837 F. Supp. at 1091.  However, neither of these states of mind is sufficient to state a claim for the intentional torts of assault and battery.  *See Archuleta*, 898 F. Supp. 2d at 1254; *Ortega*, 827 P.2d at 155.

Absent any individualized accusation that either Defendant caused intentional harmful contact or the imminent apprehension of such contact, Plaintiffs' statements that all three Defendant Officers collectively shot Plaintiff or engaged in the assault are

insufficient.  *See, e.g. doc. 40* at 23, ¶¶ 11, 13, 38, 117-121; *see also Robbins*, 519 F.3d at 1249-51

(accusations against defendants collectively are inadequate where they fail to identify the

specific conduct of named individuals which forms the basis of the claim).  Absent

supporting facts, the conclusory assertion that Defendants Lannoye's, Zavala's, and

Swantek's actions were collectively "intentional, willful [and]wanton . . ." is also

inadequate.  *Doc. 40* at 24, ¶ 123; *see also Iqbal*, 556 U.S. at 678 ("recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice").  Plaintiffs have

thus failed to state a claim against Defendants Zavala and Swantek for the torts of assault

and battery, and dismissal is appropriate under Rule 12(b)(6).

     *c.   Claim for Violations of New Mexico Constitution under the Tort Claims Act*

     Finally, Plaintiffs have asserted a claim against Defendants Zavala and Swantek

based on violations of the New Mexico Constitution committed while acting within the

scope of their duties.  *See doc. 40* at 24-29.  As law enforcement officers, neither of these

defendants has immunity from such a suit.  N.M. Stat. Ann. 1978 § 41-4-12.  Further, New

Mexico law applies the same reasonableness standard to excessive force claims under the

New Mexico constitution as for similar federal constitutional claims.  *Sisneros*, 685 F. Supp.

2d at 1222.  Under this standard, liability is extended even to non-shooting officers whose

reckless or deliberate pre-seizure conduct, including active participation in a substandard

operation, causes the need for the use of deadly force.  *See Diaz*, 924 F. Supp. at 1097;

*Stewart*, 904 F. Supp. 2d at 1157.  As explained in detail in the Court's analysis of Plaintiffs'

§ 1983 claim, Plaintiffs have adequately stated a claim against Defendants Zavala and Swantek on this basis.  *See supra*, Section 1(c).  For the same reasons, Defendants' motion to dismiss is not warranted as to this cause of action.

### 6.  *§ 1983 Municipal / Supervisory Liability Claims Against Defendant City of Roswell*

Plaintiffs next claim that the City of Roswell failed in its duty to train and supervise officers of the Roswell Police Department regarding proper procedures for arrest and the reasonable use of force.  *Doc. 40* at 20-22.  Plaintiffs further claim that the City of Roswell , acting through its official policymaker Phil Smith, caused the deprivation of Johnson's constitutional rights by maintaining policies and customs for the use of lethal force which exhibited deliberate indifference towards the rights of  the mentally ill, suicidal, and those in lawful possession of firearms.  *Id*.

Unlike a state government, a municipality is not entitled to sovereign immunity and is considered a "person" for purposes of a § 1983 suit.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978).  However, a municipality cannot be held vicariously liable under § 1983 merely because of the acts of its agents.  *Monell*, 436 U.S. at 691.  Rather, a municipality is liable only if an "action pursuant to official municipal policy of some nature caused a constitutional tort."  *Id*.  Accordingly, in order to establish a § 1983 claim against a municipal entity, a plaintiff must demonstrate that the deprivation of his rights was the result of an official policy or custom.  *Id*. at 90-91; *see also Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("A plaintiff suing a

municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.").

Liability based upon a municipal policy may be established through the existence of any one of the following: (1) a formal regulation or policy statement; (2) an informal widespread custom that, although not authorized by express municipal policy, is so permanent and well settled as to carry the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; and (5) injuries caused by a failure to adequately train or supervise employees, where such failure results from "deliberate indifference" to the injuries that may be caused.  *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188-89 (10th Cir. 2010); *Stewart v. City of Prairie Vill., Kan.*, 904 F. Supp. 2d 1143, 1161 (D. Kan. 2012).  Here, Plaintiffs assert that a formal policy or permanent and widespread custom adopted and implemented by the City of Roswell through Police Chief Phil Smith was the direct and moving force behind their injuries and the violations of their constitutional rights.  *Doc. 40* at 20-22.  Plaintiffs also claim that the City of Roswell's failure to provide proper training and supervision regarding the use of deadly force was so likely to result in grave constitutional injury to citizens that such failure constituted deliberate indifference to the constitutional rights of Plaintiffs.  *Id*.

a.   *Official Policy or Custom*

As noted, municipalities can be sued directly under § 1983 where the allegedly unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 659.  In addition, local governments may alternatively be sued "pursuant to governmental 'custom' even though such custom has not received formal approval through the government's official decision-making channels." *Id.*  Here, Plaintiffs have asserted liability under both theories, alleging that "[p]rior to October 28, 2013, Defendant City of Roswell developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of citizens in the City of Roswell, which caused the violation of Plaintiff's constitutional rights." *Doc. 40* at 20, ¶ 102.  Defendants assert that these allegations are simply a repeat of the formulaic element recitations which the Court found insufficient in the original Complaint.  *See doc. 41* at 13-14; *doc. 39* at 8.  It is true that, in order to survive dismissal, a claim requires specific factual allegations of an official custom or policy by Defendants that caused constitutional violations.  *See Twombly*, 550 U.S. at 545; *Iqbal*, 556 U.S. at 668.  However, unlike the original Complaint, Plaintiffs' Amended Complaint contains sufficiently specific factual allegations regarding the allegedly wrongful policy.

In describing the policy from which they assert liability against the City of Roswell, Plaintiffs specifically state that:

> Plaintiffs have received information Roswell Police have a policy if being
> sent to a scene or at a scene seeing any citizen with a gun to shoot to kill. In
> short, Roswell Police policy in a State where a citizen may have a firearm,
> carry a firearm, use a firearm to defend his person, his home or his family, if
> the police see you with it, they are or are allowed to use lethal force even in a
> suicide or mental health case[.]

*Doc. 40* at 9, ¶ 39.  This specific policy is further referenced several times throughout the

Amended Complaint.  *See id.* at 2, 10,16, 20, p. 2 (alleging the liability of the City of Roswell

for "promulgating, creating, and implementing policies, procedures, and customs that

caused the harm to and damages to Plaintiffs, especially the policy of Roswell's police

officers to use lethal force in the instances in which a person maybe lawfully armed"); ¶ 46

(alleging that the City of Roswell encouraged law enforcement officers to use procedures

violating citizens' rights "and in fact had a policy of using lethal force if called to a scene

and a person presented with a firearm, such as Plaintiff Johnson did."); ¶ 78 (alleging that

departmental policies, procedures, and protocols in connection with the use of force and

the use of excessive force "were wrong, lethal, dangerous and not in the best interests of

the public."); ¶ 101 (asserting that the City of Roswell initiated improper policies "for use

of lethal force and/or in dealing with the mentally ill and/or suicidal.").  At a later stage,

Plaintiffs will of course bear the burden of producing evidence to prove the existence of

this alleged policy.  *See Anderson*, 477 U.S. at 250.  However, analyzed under the standards

of Rule 12(b)(6), factual allegations within the Amended Complaint that contend with

particularity that such a policy exists are sufficiently well pled to state a claim.  *See Iqbal*,

556 U.S. at 696 ("a court must take [a complaint's] allegations as true, no matter how skeptical the court may be").

Plaintiffs also claim that, even if the Roswell Police Department's procedure of immediately utilizing lethal force against anyone in possession of a firearm was not formalized as an official policy, it constituted a custom and pattern of conduct permitted and condoned by the City of Roswell for so long and with such frequency as to constitute accepted policy. *Doc. 40* at 10, 21, ¶¶ 43-46, 106-107.  Specifically, Plaintiffs claim that the conduct of Defendants Lannoye, Zavala, and Swantek in immediately resorting to excessive force without warning was part of a pattern of conduct under which Defendants, acting under color of law and without justification, have violated the constitutional rights of various persons. *Id.* at 10, ¶¶ 43-44.  Plaintiffs further assert that Defendants Phil Smith and City of Roswell were aware or reasonably should have been aware of these wrongful actions and did not take action to correct them, instead allowing or encouraging tactics and procedures which instigated unconstitutional seizures. *Id.* at 10, 20-21, ¶¶ 45-46, 104. In support of these contentions, Plaintiffs claim that the City of Roswell failed to investigate or take disciplinary actions against subordinate officers or provide any avenue of redress for complaining citizens, despite being aware of the pattern of conduct with regard to the use of lethal force. *Id.* at 10-11, 20-21 ¶¶ 47, 104-07.  These allegations, presumed true, may create the plausible inference of a widespread unlawful custom. *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (finding that, while a failure to

discipline an officer after the violation could not have caused that particular violation, "[a] failure to investigate or reprimand might [] cause a future violation by sending a message to officers that such behavior is tolerated"); *Ortega v. City and Cty. of Denver*, 944 F. Supp. 2d 1033, 1039-40 (D. Colo. 2013) (holding that the plaintiff could demonstrate a custom of condoning excessive force where the plaintiff produced evidence "in which [the police department] has failed to adequately investigate a citizen complaint of excessive force and the implicated officer was not disciplined"). Accordingly, Plaintiffs have sufficiently stated a claim for the existence of an actionable municipal custom.

Having sufficiently pled the existence of a municipal policy or custom, Plaintiffs must also plead sufficient facts to show that the enforcement of a municipal policy or custom was "the moving force" behind the violation of federally protected rights. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997); *see also City of Canton*, 489 U.S. 378, 385 (1989) (there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). Here, Plaintiffs' allege that the police fired on Johnson immediately after he opened the door while holding a firearm, even though they had arrived for a welfare check. *See doc. 40* at 4-5, 7, 9 ¶¶ 11-13, 29, 38, 40. This conduct is directly consistent with the Roswell Police Department's policy, as alleged by Plaintiffs, of instructing and encouraging police to use lethal force against any citizen in possession of a firearm. *Id.* at 2, 9-10, ¶¶ 39, 46. Further, Plaintiffs explicitly assert that the conduct described in detail and attributed to Defendants Lannoye, Zavala, and Swantek

constituted implementation of a custom or policy that violated the rights of Plaintiffs.  *Id.* at 19, ¶ 95.  These facts, taken as true, are sufficiently specific to create a plausible claim that the purportedly improper policy and custom was the moving force behind the officers' conduct with regard to the alleged constitutional deprivation.

> ### b.  Inadequate training/supervision

Consistent with the *Monell* standard of municipal liability, the Supreme Court has instructed that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989).  The Tenth Circuit has expounded upon this rule, explaining that in order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a plaintiff must satisfy the following requirements:

> (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Thomson*, 584 F.3d at 1322 (quoting *Allen,* 119 F.3d at 841–842).

Under this standard, the face of Plaintiff's Complaint has alleged facts which, taken as true, are sufficient to state a claim upon which relief can be granted.  As discussed at length above, Plaintiffs have satisfied the first factor by sufficiently stating a claim that

Officers Zavala, Swantek, and Lannoye exceeded Fourth Amendment limitations through the unreasonable use of deadly force and reckless pre-seizure conduct necessitating the use of force.  *See supra*, Sections 1(c), 2.  The facts pled regarding the alleged use of force by officers against Johnson are also sufficient to state a plausible claim under the second factor, as the use of force against Johnson arose in circumstances that constitute a usual and recurring situation with which police officers must deal.  *See Allen,* 119 F.3d at 841-42 (holding that "[it is not] uncommon for officers to have to deal with persons armed with deadly weapons . . . [and that therefore] there was evidence that the use of force arose under circumstances that constituted a usual and recurring situation with which police officers must deal"); *Stewart v. City of Prairie Vill., Kan.*, 904 F. Supp. 2d 1143, 1158-62 (D. Kan. 2012) (holding that confronting an "armed and suicidal or emotionally disturbed individual" constitutes a "usual and recurring situation with which officers must deal").

With regard to the third factor, the Tenth Circuit has explained that:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.  In most instances, notice can be established by proving the existence of a pattern of tortious conduct.  In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.  Even where the City's "policy is not unconstitutional, a single incident of excessive force can establish the existence of an inadequate

training program if there is some other evidence of the program's inadequacy."

*Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003) (internal citations and quotation marks omitted).  Plaintiffs have asserted that Roswell Police Officers were trained, consistent with the Department's policy, to use lethal force against any citizen with a gun, regardless of whether the person lawfully possesses the weapon or whether the case involves a suicidal or mentally ill individual.  *Doc. 40* at 2, 9-10, ¶¶ 39, 45-46.  This claim, if true, would certainly create the highly predictable and plainly obvious consequence of violating the federal rights of citizens.  *See Allen*, 119 F.3d at 842-44  (holding that evidence viewed in the light most favorable to plaintiff established that improper training which encouraged aggressive police action towards armed suicidal or mentally disturbed people was so obviously likely to result in violation of constitutional rights that the policymakers of the City could reasonably be said to have been deliberately indifferent); *see also Schaefer v. Whitted*, 121 F. Supp. 3d 701, 719 (W.D. Tex. 2015) (holding that, in evaluating municipal liability, "it is highly predictable [that] failing to train officers regarding how to act with individuals legally entitled to carry firearms would result in the constitutional violation alleged here and [that] this failure to train was a moving force behind [plaintiff's] death").

Likewise, Plaintiffs have pled sufficient facts to state a plausible claim of a direct causal link between the constitutional deprivation and the inadequate training.  As discussed, Plaintiffs explicitly assert that the conduct of Defendants Lannoye, Zavala and Swantek constituted implementation of a custom or policy that violated the rights of

Plaintiff.  *See supra*, Section 6(a).  These alleged facts are sufficiently well pled to demonstrate a causal link between the officers' purportedly improper training and the alleged constitutional deprivation.

For these reasons, Plaintiffs have adequately stated a claim for municipal liability against the City of Roswell on the basis of an unconstitutional policy or custom and for a failure to properly train its law enforcement employees.  Accordingly, dismissal under Rule 12(b)(6) is not appropriate as to this claim.

### 7.   *State Law Supervisory Liability and Respondeat Superior Claims against Defendant City of Roswell*

Plaintiffs next claim that the City of Roswell, as an entity with supervisory responsibility over law enforcement personnel, is jointly and severally liable for the actions of Defendants Smith, Lannoye, Zavala, and Swantek under the doctrine of vicarious liability and *respondeat superior*.  *Doc. 40* at 31-32.  As an initial matter, the Court notes that Plaintiffs have, through oversight or otherwise, asserted two identically-worded claims for supervisory and vicarious liability in Counts Eight and Nine of their Amended Complaint.  *See id.*  As evaluating two indistinguishable claims would obviously be redundant, the Court will dismiss Count Nine and proceed to evaluate the merits of Plaintiffs' liability claim against the City of Roswell under a single count.

The Court has explained that, under Section 41–4–12 of the Tort Claims Act, government immunity does not apply to liability for personal injury resulting from assault, battery or deprivation of state or federal constitutional rights when caused by law

enforcement officers within the scope of their duties.  N.M. Stat. Ann. § 41–4–12.  In addition, the New Mexico Supreme Court has held that the doctrine of *respondeat superior* extends liability to public entities that have supervisory control over tortious actors.  *Silva v. State*, 745 P.2d 380, 384-85 (N.M. 1987); *see also Valencia v. De Luca*, No. 13 CV 930 JAP/WPL, 2014 WL 11430951, at *21 (D.N.M. Aug. 26, 2014).  The New Mexico Supreme Court explicitly stated that "[a] governmental entity is not immune from liability for any tort of its employee acting within the scope of duties for which immunity is waived." *Silva*, 745 P.2d at 385.  The City of Roswell is therefore not immune from Plaintiffs' claims of supervisory liability and *respondeat superior*.  Thus, this Court may proceed to the merits of these claims.

Plaintiff's Amended Complaint has alleged facts which, taken as true, are sufficient to state a claim upon which relief can be granted.  As discussed at length above, Plaintiffs have satisfied the first factor by sufficiently stating a claim that Officers Zavala, Swantek, and Lannoye exceeded Fourth Amendment limitations through the unreasonable use of deadly force and reckless pre-seizure conduct necessitating the use of force.  *See supra*, Sections 1(c), 2.  Under the doctrine of *respondeat superior*, a well-pled claim against subordinate officers is itself sufficient to state a claim against the public entity, as there is no necessity of demonstrating wrongdoing by the entity itself.  *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010); *Abalos v. Bernalillo Cty. Dist. Atty's Office*, 734 P.2d 794, 799

(N.M. Ct. App. 1987).   Accordingly, Plaintiffs have sufficiently stated a claim for vicarious liability against the City of Roswell.

Turning to supervisory liability, a city may be held liable for negligent training and supervision of its officers, provided that these deficiencies were a proximate cause of the enumerated tort.  *Ortiz v. N.M. State Police*, 814 P.2d 117, 120 (N.M. Ct. App. 1991); *McDermitt v. Corr. Corp. of America*, 814 P.2d 115, 116 (N.M. Ct. App. 1991).  Here, Plaintiffs have asserted sufficient facts demonstrating a causal link between the alleged wrongdoing by the officers and the inadequate or improper training.  *See supra*, Section 6.  Further, Plaintiffs explicitly assert that the conduct of Defendants Lannoye, Zavala, and Swantek constituted implementation of a municipal custom or policy that violated the rights of Plaintiff.  *Id.*  These alleged facts are sufficiently well pled to demonstrate a causal link between the officers' purportedly improper training and the alleged torts of assault and battery.  Plaintiffs have thus stated a claim sufficient to survive Defendants' motion to dismiss as to this cause of action.

### 8.  *§ 1983 Official Capacity Claim against Defendant Smith*

Plaintiffs have asserted that Defendant Smith, in his official capacity, failed in his duties to adopt or enforce appropriate policies, procedures, and protocol.  *See doc. 40* at 15-17.  Plaintiffs also assert that Defendant Smith failed in his duties to properly screen, train, monitor, and supervise subordinate law enforcement officers as it related to the use of lethal force and proper procedures when dealing with mentally ill or suicidal suspects.  *Id.*

51

Plaintiffs argue that these transgressions were the direct and proximate cause of Plaintiffs' constitutional deprivations and other injuries. *Id.* at 17. Defendants seek dismissal of this claim on the basis that it is duplicative of the claim for municipal liability asserted against the City of Roswell itself. *See doc. 41* at 11-12. Plaintiffs respond that a claim may properly be brought against an official in his official capacity where a municipal policy or custom is the moving force behind a constitutional deprivation and emphasized that the facts alleged state a claim for municipal liability. *See doc. 51* at 11-15.

It is true that where a municipality is liable in its own name, a § 1983 suit can be maintained against a local government official in their official capacity. *Monell*, 436 U.S. at 691 n. 55. Further, as discussed in the municipal liability section above, Plaintiffs' allegations that Defendant Smith, acting as a final policymaker in his official capacity, created and implemented unconstitutional policies and customs and failed to provide adequate training to officers are indeed sufficient to state a claim for liability against the City of Roswell. *See supra,* Section 6. However, "[a]n action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble,* 134 F.3d 1006, 1009 (10th Cir. 1998) (citing *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985)). In other words, a § 1983 action naming the municipality itself accomplishes the same thing that a claim against the officers in their official capacity would accomplish. *Vondrak v. City of Las Cruces*, No. CIV.05-0172 JB/LFG, 2009 WL 1300945, at *2 (D.N.M. Mar. 30, 2009). For this reason, "[n]aming either is

sufficient [but] [n]aming both is redundant." *Id.*  Accordingly, as Plaintiffs have already

brought a claim directly against the municipality, their claims against Defendant Smith in

his official capacity must be dismissed as duplicative.  *See Vondrak*, 2009 WL 1300945 at *2;

*Stewart v. City of Prairie Vill., Kan.*, 904 F. Supp. 2d 1143, 1161 (D. Kan. 2012).

### 9.  *§ 1983 Individual  Capacity Claim against Defendant Smith*

In addition to seeking redress against him as an agent of the City of Roswell,

Plaintiffs have also made clear that they are pursuing claims of wrongdoing against

Defendant Smith in his individual capacity.  *See doc. 40* at 1.  For purposes of a § 1983 suit,

Smith's supervisor status as Chief of the Roswell Police Department is by itself insufficient

to establish an affirmative link between defendant and constitutional violation.  *Duffield v.*

*Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008); *Jenkins v. Wood,* 81 F.3d 988, 994-95 (10th Cir.

1996) (holding that the defendant's role must be more than one of abstract authority over

individuals who actually committed a constitutional violation).  However, "in situations

where an affirmative link exists between the constitutional deprivation and either the

supervisor's personal participation, his exercise of control or direction, or his failure to

supervise, the supervisor may be personally liable."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162

(10th Cir. 2008).

To establish such a link, the Tenth Circuit has held that a "plaintiff may . . . succeed

in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant

promulgated, created, implemented or possessed responsibility for the continued

operation of a policy that (2) caused the complained of constitutional harm, and (3) acted

with the state of mind required to establish the alleged constitutional deprivation.  *Dodds*

*v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).  However, as with all suits attempting to

establish personal liability under § 1983, this type of personal-supervisory claim is subject

to the qualified immunity defense.  *See id*. at 1191-1208.  In summary, a suit against a

supervisor in an individual capacity looks only to the action or inaction of that supervisor

and must overcome the defense of qualified immunity.

Here, Plaintiffs have pled sufficient facts to state a claim for supervisory liability.

They have claimed that Defendant Smith had a duty to properly screen, hire, train,

monitor, supervise, and discipline subordinate law enforcement officers, including

Defendants Lannoye, Zavala and Swantek, "especially as it related to the use of lethal

force, proper procedures when dealing with the mental health and/or suicidal."  *Doc. 40* at

15, ¶ 74.  They further asserted that Defendant Smith failed to: (1) "adopt proper policies,

procedures [and] protocols;" (2) "implement the proper training;" (3) "appropriately

monitor the performance and activities of subordinate law enforcement officers;" (4)

"failed to conduct mandatory post incident investigations;" and (5) "allowed, ratified,

adopted, and otherwise condoned the activities of Defendants Joseph Lannoye, Cruz

Zavala and Robert Swantek . . . ."  *Id.* at 16-17, ¶¶ 79-82.  In support of these contentions,

Plaintiffs have put forth the factual allegation that Defendant Smith, acting on behalf of the

City of Roswell, caused the deprivation of Plaintiff Johnson's constitutional rights by

maintaining policies and customs for the use of lethal force which exhibited deliberate indifference towards the rights of the mentally ill, suicidal, or those in lawful possession of firearms.  *Id.* at 20-22, ¶¶ 101-104, 112.

As explained in the analysis on the City of Roswell's municipal liability, Plaintiffs have pled sufficient facts to state a plausible claim of a direct causal link between the constitutional deprivation and the improper policy and inadequate training/ supervision performed by Defendant Smith on behalf of the municipality.  *See supra*, Section 6. Plaintiffs have further asserted that Defendant Smith knew or should have known that subordinate law enforcement officers were violating citizens' constitutional rights and lacked adequate training because the policies and protocols maintained in connection with the use of force were "wrong, lethal, dangerous and not in the best interests of the public." *Doc. 40* at 16, ¶¶ 77-78.  These alleged facts are sufficiently well pled to demonstrate a causal link between the purportedly improper policies, supervision, and training and the alleged constitutional deprivation.

Finally, Defendant Smith is not entitled to qualified immunity as to this claim.  As pointed out above, the weight of authority from other courts as well as case law within the Circuit has clearly established that without additional factors indicating an imminent threat to officers or bystanders, the mere presence of a weapon is not sufficient to justify the use of deadly force.  *See supra*, Section 3.  Further, it has also been established that policies and training which advise officers to use lethal force against anyone in possession

of a weapon, regardless of threat or mental health of the suspect, would create the highly predictable and plainly obvious consequence of violating the clearly established rights of citizens. *See Allen*, 119 F.3d at 842-44; *Schaefer*, 121 F. Supp. 3d at 719. As a result, the Court determines that, accepting Plaintiffs' account of the incident, clearly established violations asserted by Plaintiffs preclude dismissal of the (individual) supervisory claim against Defendant Smith on the basis qualified immunity. *Thomson*, 584 F.3d at 1313.

### 10. State Law Supervisory Liability Claim against Defendant Smith

Plaintiffs have also asserted a claim of supervisory liability against Defendant Smith under New Mexico law. *See doc. 40* at 30-31. In addition to waiver for public entities, New Mexico case law has held that the Tort Claims Act waives immunity for supervising officers where their subordinates are alleged to have committed one of the violations enumerated in Section 41-4-12. *See Ortiz*, 814 P.2d at 120. It is undisputed that the assault and battery allegations as well as the claims of state constitutional violations levied by Plaintiffs fall within this waiver. *See doc. 40* at 17-19; N.M. Stat. Ann. § 41–4–12. Thus, the New Mexico Tort Claims Act permits adjudication of these claims as to Defendant Smith.

Plaintiffs have alleged sufficient facts to establish a claim for supervisory liability, claiming that Defendant Smith had a duty to properly supervise and discipline subordinate law enforcement officers as it related to the use of lethal force, proper procedures when dealing with suicidal individuals. *Doc. 40* at 15, 30, ¶¶ 74, 146. They further assert that Defendant Smith failed to adopt and enforce proper policies,

procedures, and protocols which provide officers with alternative options regarding the use of force and also failed to implement the proper training and discipline for subordinate law enforcement officers, including Defendants Joseph Lannoye, Cruz Zavala and Robert Swantek. *Id.* at 16-17, 30, ¶¶ 79-82, 149-150.

As explained at various points above, Plaintiffs have stated a claim demonstrating a causal link between the harms alleged and both the improper policy and the inadequate supervision performed by Defendant Smith. *See supra*, Sections 6, 9. These facts, presumed true, are sufficient to create the plausible inference that the improper policies, supervision, and training of Defendant Smith proximately Plaintiffs' alleged injuries.

> ### 11. Claims against All Defendants for Loss of Consortium and Emotional Distress / Post Traumatic Stress Disorder ("PTSD") on Behalf of Plaintiff Tanya Johnson

In Plaintiffs' final count, they assert that Defendants are liable for loss of spousal consortium on the basis that the negligent acts of the Defendants have denied Plaintiff Tanya Johnson the ability to intimately associate with her husband, Richard Johnson. *Doc. 40* at 32. In addition, Plaintiffs claim that "the negligent acts, failures, and omissions of the Defendants" referenced throughout the Amended Complaint have caused emotional distress to Tanya Johnson, resulting in the onset of PTSD. *Id.* As an initial matter, it is unclear whether Plaintiffs are asserting liability under § 1983 or a violation of common law tort, as they failed to state the legal basis for relief on either of these alleged harms. *See id.* Regardless, Plaintiffs are not entitled to relief under either possible theory.

Several district courts in this Circuit have held that loss of consortium claims may not be founded upon § 1983 claims asserted by a spouse. *See, e.g., Winton v. Bd. of Comm'rs of Tulsa Cty., Okla.,* 88 F.Supp.2d 1247, 1254-56 (N.D.Okla.2000); *Dutton v. City of Midwest City*, No. CIV-13-911-HE, 2014 WL 1572795, at *1 (W.D. Okla. Apr. 17, 2014); *Sumpter v. Albrecht*, No. 10-CV-00580-WYD-MJW, 2011 WL 940901, at *5 n. 4 (D. Colo. Mar. 16, 2011), *report and recommendation adopted*, 2012 WL 252980 (D. Colo. Jan. 26, 2012).  They reason that a person bringing a § 1983 suit must allege a violation of their own rights under the constitution or federal laws, and may not assert such a claim for tort recovery based on a violation of the constitutional rights of a spouse.  *Winton*, 88 F. Supp. 2d at 1254.  This Court finds the reasoning persuasive and adopts it.  Moreover, this rationale also forecloses Plaintiff Tanya Johnson's claim for negligent infliction of emotional distress if brought pursuant to § 1983 because she alleges only that the conduct violating her husband's rights and causing his injuries have resulted in her severe emotional distress. *See doc. 40* at 32.  Accordingly, her claims cannot be maintained pursuant to § 1983 suit. *See Murphy*, 320 F. Supp. 2d at 1184-85 (dismissing a § 1983 claim for emotional distress and loss of familial association where a plaintiff's spouse was killed by police because plaintiff could not bring a § 1983 claim on behalf of a relative's rights and the complaint alleged no facts that police conduct was directed at her or done with the intent to interfere with her right to familial association).

Plaintiffs' claims for loss of consortium and negligent infliction of emotional distress also fail to state a claim upon which relief can be granted when evaluated under state law.  The New Mexico Tort Claims Act protects Defendants from tort liability unless Plaintiffs can establish that Defendants waived their immunity under the Act.  *See* N.M. Stat. Ann. § 41–4–4 (granting immunity from tort liability for "governmental entit[ies] and any public employee while acting within the scope of duty" except as waived).  This Court agrees with other judges in this District that the State of New Mexico and its officials are immune from spousal suits for loss of consortium and infliction of emotional distress arising from police shootings because these claims are not included within the list of specifically-enumerated torts for which immunity has been waived.  *Murphy*, 320 F. Supp. 2d at 1204-05; *see also Romero v. Otero*, 678 F. Supp. 1535, 1540 (D.N.M. 1987).  Defendants are accordingly entitled to dismissal of Plaintiff Tanya Johnson's claims pursuant to Rule 12(b)(6).

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have stated a claim upon which relief can be granted as to the following: (1) Plaintiffs' federal § 1983 Claim against Defendants Lannoye, Zavala, and Swantek in their individual capacities (Count One); (2) Plaintiffs' state law claims against Defendant Lannoye, in his individual capacity (Counts Three, Five, Six); (3) Plaintiff's state-law claims against Defendants Zavala and Swantek in their individual capacities for common-law negligence and state constitutional violations

(Counts Three and Six); (4) Plaintiffs' § 1983 claim for municipal and supervisory liability against Defendant City of Roswell (Count Four); (5) Plaintiffs' state law claim for supervisory liability against Defendant City of Roswell (Count Eight); (6) Plaintiffs' federal § 1983 claim for supervisory liability against Defendant Smith in his individual capacity (Count Two); and (7) Plaintiffs' state law claim for supervisory liability against Defendant Smith in his individual capacity.

The Court finds that Plaintiffs have failed to state a claim upon which relief can be granted as to the following: (1) Plaintiff's state law claims against Defendants Zavala and Swantek in their individual capacities for assault and battery (Count Five); (2) Plaintiffs' claim against all Defendants for Plaintiff Tanya Johnson's PTSD and Loss of Consortium (Count 10).  Additionally, Plaintiffs' § 1983 claim for supervisory liability against Defendant Smith in his official capacity (Count Two) must be dismissed as duplicative of the claim for municipal liability against  Defendant City of Roswell.  Likewise, Count Nine must be dismissed as duplicative because it contains identical wording to Count Eight. Accordingly, a partial judgment of dismissal pursuant to Rule 12(b)(6) is appropriate.

IT IS THEREFORE ORDERED that Dismissal without prejudice is GRANTED for:

Count Five Against Defendants Zavala and Swantek, Count Nine against Defendant City

of Roswell, Count Two against Defendant Smith in his official capacity, and Count Ten as

to all Defendants.  Defendants' Motion to Dismiss (*doc. 41*) is DENIED as to all other

counts.

GREGORY B. WORMUTH
United States Magistrate Judge
**Presiding by Consent**